# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Lacava | : | |
| | : | |
| v. | : | No. 96 C.D. 2016 |
| | : | |
| Southeastern Pennsylvania | : | |
| Transportation Authority | : | |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia, | : | |
| Appellant | : | |
| | | |
| Joseph Lacava | : | |
| | : | |
| v. | : | No. 119 C.D. 2016 |
| | : | |
| Southeastern Pennsylvania | : | |
| Transportation Authority and | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: Southeastern Pennsylvania | : | |
| Transportation Authority | : | |
| | | |
| Joseph Lacava, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 120 C.D. 2016 |
| | : | Argued: February 7, 2017 |
| SEPTA and City of Philadelphia | : | |


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED: March 29, 2017

This matter involves various cross appeals from the December 21, 2015 orders of the Court of Common Pleas of Philadelphia County (trial court), which, *inter alia*, denied the City of Philadelphia's (City) post-trial motion for judgment notwithstanding the verdict (judgment n.o.v.) and entry of judgment against Southeastern Pennsylvania Transportation Authority (SEPTA); denied SEPTA's post-trial motion for judgment n.o.v. and a new trial; and denied Joseph Lacava's (Lacava) post-trial motion to file an amended complaint.

## Facts and Procedural History

On July 13, 2013, Lacava sustained injuries when the wheel of his motor scooter allegedly struck a discontinued and exposed trolley track near the intersection of 11th and Cantrell Streets in the City. Lacava subsequently commenced suit against SEPTA, the City, and the Pennsylvania Department of Transportation (PennDOT),[1] alleging negligence and premises liability causes of action. After trial, the jury found both SEPTA and the City liable and awarded $700,000.00 in damages, attributing thirty percent of the causal liability to the City and seventy percent to SEPTA. Thereafter, the City, SEPTA, and Lacava filed post-trial motions for relief.

## City's Post-Trial Motion

In its post-trial motion, the City sought judgment n.o.v., asserting that Lacava did not present sufficient evidence to establish that the City breached any duty to Lacava because his injuries were caused by trolley tracks or the street surface within eighteen inches of those tracks, which it averred is SEPTA's duty to maintain pursuant to *Yackobovitz v. Southeastern Pennsylvania Transportation Authority*, 590

---

[1] PennDOT was dismissed from this litigation by stipulation.

2

A.2d 40 (Pa. Cmwlth. 1991). Similarly, the City argued that it did not owe Lacava a duty under section 324A of the Restatement (Second) of Torts (the Restatement)[2] because the same does not apply to government action and, even if it did, Lacava failed to establish that it applies in this matter.

The City also averred that Lacava failed to introduce sufficient evidence to fall within the "streets" exception to governmental immunity under the act commonly referred to as the Political Subdivision Tort Claims Act[3] because Lacava's injuries were caused by trolley tracks, which is not a dangerous condition of the street. Moreover, even if the injuries were caused by the street surface, the street surface was within eighteen inches of the tracks, which the City asserted is SEPTA's responsibility to maintain.

The City also sought an entry of judgment on its crossclaim against SEPTA, alleging that it entered into a lease-leaseback agreement[4] with SEPTA

---

[2] Section 324A of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Yackobovitz v. Southeastern Pennsylvania Transportation Authority*, 590 A.2d 40, 46 n.12 (Pa. Cmwlth. 1991).

[3] 42 Pa.C.S. §§8541-8542.

[4] On September 27, 1978, the City and SEPTA entered into a lease agreement by which SEPTA leased transit properties to the City that it was acquiring from the Philadelphia **(Footnote continued on next page…)**

wherein SEPTA agreed to indemnify the City for any claims arising from the defective condition of SEPTA trolley tracks, or the maintenance of the street surface within eighteen inches of the tracks. Alternatively, the City requested an evidentiary hearing on its crossclaim pursuant to Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) No. 227. The City also sought to mold the verdict against it to $210,000.00 based on its thirty percent liability of the $700,000.00 verdict.

## SEPTA's Post-Trial Motion

In its motion for post-trial relief, SEPTA sought judgment n.o.v., asserting that no reasonable person could disagree that the verdict should have been rendered in favor of SEPTA because Lacava failed to produce sufficient evidence to establish that: an exception to sovereign immunity applied to SEPTA; SEPTA's alleged negligence caused Lacava's harm; SEPTA had notice of a dangerous condition at the location of Lacava's accident; and SEPTA was seventy percent causally negligent.

---

**(continued…)**

Transportation Company (PTC). The lease agreement provided, *inter alia*, that SEPTA reserved the right to use and occupy city streets and that the City was obligated to maintain and repair PTC transit facilities conveyed under the agreement. The same day, the City entered into a leaseback agreement with SEPTA, wherein it leased back to SEPTA the properties SEPTA was acquiring from PTC, as well as City-owned transit facilities. The leaseback agreement provided that SEPTA is responsible for maintenance and repair of the leased properties and that SEPTA must also defend and indemnify the City for any damages arising from the condition of the leased property. *Yackoboviz*, 590 A.2d at 44-45. "These agreements were executed to combine the 'soon to be owned' SEPTA transit facilities with City-owned transit facilities, provide[] a method to facilitate such a combination, and . . . delineate[] [the parties'] respective rights and obligations to each other." *Id*. at 44.

4

SEPTA also sought a new trial, alleging that the jury's verdict was contrary to the weight of the evidence and shocks the conscience. According to SEPTA, a new trial was warranted because, *inter alia*, Lacava failed to meet his burden to show that SEPTA could be liable under an exception to sovereign immunity; the evidence overwhelmingly showed that the cause of the accident was a pothole and not a raised rail; Lacava failed to establish that SEPTA had notice of the alleged dangerous condition; and, over SEPTA's objection, the trial court submitted a verdict sheet that failed to include any special interrogatories regarding the issue of whether Lacava's claims fell within an exception to immunity. SEPTA also sought to mold the verdict and reduce the $490,000.00 award of damages to $250,000.00 pursuant to the statutory cap contained in section 8528 of the Sovereign Immunity Act.[5]

**Lacava's Post-Trial Motion**

In his motion for post-trial relief, Lacava alleged that SEPTA provided him with additional discoverable documents after trial that directly addressed liability and notice issues that were litigated during trial.[6] According to Lacava, these documents indicated that SEPTA performed maintenance and repair work at the accident site prior to Lacava's injuries and belied SEPTA's contention that it did not previously inspect or have prior notice of the dangerous condition. Consequently, Lacava's post-trial motion sought to amend his complaint to include counts against SEPTA for punitive damages and civil rights violations because Lacava averred that

---

[5] 42 Pa.C.S. §8528.

[6] After trial, SEPTA produced documents identifying certain locations where it performed maintenance and repair work.

5

SEPTA acted with deliberate indifference regarding a state-created danger that affected his bodily integrity and freedom from bodily pain or assault.

## Trial Court's Decision

By orders entered December 21, 2015, the trial court denied the City's motion for judgment n.o.v. and entry of judgment against SEPTA; denied SEPTA's motion for judgment n.o.v. and request for a new trial; denied Lacava's request for leave to file an amended complaint; and granted the City's and SEPTA's motions to mold the verdict. The parties appealed and were directed to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b).

## Trial Court's Analysis of the City's Post-Trial Motion

The trial court determined that the City was not entitled to judgment n.o.v. because Lacava presented evidence of a dangerous condition of a City-owned street. The trial court acknowledged that, generally, SEPTA is responsible for maintenance of trolley tracks, the road between the rails, and the eighteen inches on each side of the rails. However, it reasoned that, in limited instances, the City may be held liable for maintenance and repair of the same. The trial court noted that, similar to *Yackobovitz,* the City's conduct estopped it from asserting liability against SEPTA because the City undertook SEPTA's maintenance duties. The trial court clarified that it did not determine that the Restatement imposed a new duty on the City; rather, it explained that the City was estopped from shielding itself from liability because it performed a voluntary undertaking when it received a complaint regarding an alleged

6

defect within SEPTA's scope of responsibility, failed to notify SEPTA of the same, and negligently repaired the defect.

Next, the trial court concluded that its decision to deny the City's motion for entry of judgment regarding its crossclaim against SEPTA was proper because, although the City asserted a crossclaim in its pleadings, it failed to present any evidence at trial regarding an indemnification agreement with SEPTA and delayed until post-trial motions to introduce the lease-leaseback agreement and relevant indemnification provision.

### Trial Court's Analysis of SEPTA's Post-Trial Motion

The trial court reasoned that its determination to deny SEPTA's post-trial motion for a new trial and judgment n.o.v. was proper because Lacava presented evidence of a defect in SEPTA's property that constituted a dangerous condition of which SEPTA had either constructive or actual notice sufficient to fall within the real estate exception to sovereign immunity. Considering this evidence in the light most favorable to Lacava, the trial court determined that judgment n.o.v. was improper and the jury's verdict was not so contrary to the weight of evidence as to shock the conscious such that a new trial is warranted.[7]

Next, the trial court determined that it properly charged the jury with an adverse inference instruction because testimony was produced at trial indicating that there were missing documents related to road work completed near the site of the

---

[7] The trial court did not address the "pothole" exception to sovereign immunity based on its determination that there was sufficient evidence to allow for recovery against SEPTA under the "real estate" exception. Nevertheless, it noted that the jury was instructed regarding the "pothole" exception to allow the jurors to determine whether the dangerous condition was a raised rail or a pothole.

accident.[8] According to the trial court, because the testimony indicated that either the City or SEPTA completed the relevant repair work, it was the normal practice of both entities to document such work, and SEPTA would have control over these documents and it would be in SEPTA's interest to produce the same, the adverse instruction was proper and it was within the trial court's discretion to instruct the jury regarding the same. The trial court also reasoned that special interrogatories on the verdict slip were unnecessary because the issues before the jury were not lengthy or complex.

### Trial Court's Analysis of Lacava's Post-Trial Motion

The trial court noted that it has broad discretion to deny or grant a request to amend a complaint. Accordingly, the trial court determined that an amendment to the complaint would be futile because SEPTA is a Commonwealth agency and, therefore, is immune from punitive damages. Similarly, the trial court reasoned that leave to amend to include civil rights violations was not warranted because Lacava could not establish a prima facie federal civil rights claim, and a state civil rights claim was barred by immunity.

### Discussion

### I. The City's Argument that Lacava failed to establish an exception to governmental immunity under the "streets" exception

---

[8] Although SEPTA asserted in its 1925(b) statement that the trial court erred by providing an adverse inference instruction to the jury regarding SEPTA's lack of production of responsive documents, SEPTA has failed to discuss this issue in any way in its appellate brief.

"This Court's standard of review from a trial court's order denying a litigant's motion for J.N.O.V. is limited to determining whether the trial court abused its discretion or erred as a matter of law. Additionally, we must view the record in the light most favorable to the verdict winner, giving him every reasonable inference." *Hall v. Kiger*, 795 A.2d 497, 499 (Pa. Cmwlth. 2002) (citations omitted). "[T]he entry of a judgment notwithstanding the verdict . . . is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." *Atwell v. Beckwith Machinery Company*, 872 A.2d 1216, 1221 (Pa. Super. 2005) (quotations and citation omitted).

Section 8542(a) of the Judicial Code provides that a local agency[9] shall be liable for damages if: (1) the damages would be recoverable under common law or a statute creating a cause of action if caused by a person without immunity; (2) the injury was caused by a local agency or an employee thereof; and (3) the negligent act falls within an exception enumerated in section 8542(b) of the Judicial Code. 42 Pa. C.S. §8542(a).

Section 8542(b)(6)(i) of the Judicial Code states that liability may be imposed on a local agency for the following:

> (6) *Streets*.--
>
>> (i) A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a

---

[9] Section 5801 of the Judicial Code defines a "[l]ocal agency" as "[a] government unit other than the Commonwealth government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers or responsibilities under 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation); and councils of government and other entities created by two or more municipalities under 53 Pa.C.S. Ch. 23 Subch. A." 42 Pa.C.S. §8501.

reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. C.S. §8542(b)(6)(i).

Under the "streets" exception to governmental immunity, a threshold determination must be made that the "injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous." *Osborne v. Cambridge Township*, 736 A.2d 715, 723 (Pa. Cmwlth. 1999) (citing *Finn v. City of Philadelphia*, 664 A.2d 1342, 1346 (Pa. 1995)). Exceptions to immunity must be narrowly interpreted, given the express legislative intent to insulate political subdivisions from tort liability. *Mascaro v. Youth Study Center*, 523 A.2d 1118, 1123 (Pa. 1987).

The City cites this Court's decision in *Yackobovitz* for the proposition that it did not owe a duty to Lacava because SEPTA is responsible for the repair and maintenance of the street surface within eighteen inches of the trolley tracks. Similarly, the City argues that it did not owe a duty to Lacava under section 324A of the Restatement because the same does not apply to governmental action pursuant to the Pennsylvania Supreme Court's decision in *Gardner by Gardner v. Consolidated Rail Corporation*, 573 A.2d 1016 (Pa. 1990). Alternatively, if a duty exists, the City argues that Lacava failed to introduce evidence sufficient to fall within the "streets" exception to governmental immunity because Lacava's injuries were caused by a purportedly raised trolley track, which does not constitute a dangerous condition of the street.

10

Conversely, Lacava argues that the City maintained the right of maintenance and inspection under its lease-leaseback agreement with SEPTA, thus indicating that it still had responsibility for the section of the street where the tracks were laid. Moreover, according to Lacava, the trolley tracks are in the street and, therefore, fall within the "streets" exception to immunity.

In *Yackobovitz*, a woman stumbled into a pothole located within eighteen inches of a SEPTA trolley rail in Philadelphia. She and her husband filed suit against PennDOT and SEPTA, which joined the City as an additional defendant. The parties stipulated that the controlling legal issue was "the determination of who was responsible for the maintenance of the trolley track area, including the trolley rails, the roadbed between the rails, and the roadbed within eighteen inches of the outermost rails . . . ." *Id*. at 43. The parties also agreed that the related issue of the indemnification provision contained within the lease-leaseback agreements between the City and SEPTA controlled the issue of leased property and maintenance between those parties. After a hearing, the trial court found the City primarily liable and SEPTA secondarily liable, and awarded the plaintiffs approximately $60,000.00 in compensatory and delay damages. Both the City and SEPTA appealed.

On appeal, we noted that "unless altered by contract or ordinance, the entity operating a street railway is obligated to maintain and repair those portions of the streets on which its street railway tracks are located." 590 A.2d at 44. We further noted that, by entering into the lease-leaseback agreement with SEPTA:

> The City is no longer merely a government whose streets are occupied by a street railway company with no liability for roadbed maintenance, but the lessee of the street railway company. As such, it is primarily liable at common law for the maintenance of that portion of the street occupied by the street railway in that capacity. Under the City's Leaseback Agreement with SEPTA, SEPTA, however, has agreed to

11

assume the City's obligation for roadbed maintenance and defend and indemnify the City against all claims arising from improper maintenance. If the street railway roadbed is negligently maintained, causing an injury to a third party, SEPTA is then ultimately responsible for the payment of that claim.

*Id*. at 45.

Nevertheless, SEPTA argued that, even if it had the obligation to perform roadbed repair and maintenance of the street railway roadbed under the lease-leaseback agreement, the City, by voluntarily maintaining and repairing those areas, was estopped from asserting that SEPTA is obligated to perform the same and was liable for the injured plaintiff's injuries. Additionally, SEPTA maintained that the City was liable to the plaintiffs pursuant to section 324A of the Restatement because it voluntarily assumed SEPTA's duty to perform maintenance, and failed to properly perform its gratuitously assumed duty.

We observed that the record indicated that the City regularly maintained and repaired the roadbed between and adjacent to SEPTA's trolley tracks from 1968 through November 1984; but, in November 1984, the City notified SEPTA that it was not responsible for roadbed maintenance and would cease performance of the same. We reasoned that, as of receipt of that notice, SEPTA could no longer reasonably rely on the City's continued performance of SEPTA's duty. However, the injured plaintiff's accident occurred prior to the City's notification to SEPTA. Therefore, we determined that "[t]he City's negligent performance, *albeit* gratuitously performed, under Section 324A allowed the [plaintiffs] to maintain and recover damages against the City." 590 A.2d at 47.

Although we concluded that the plaintiffs could recover against the City, SEPTA maintained that it was not required to indemnify the City under the lease-leaseback agreement because the City induced SEPTA to believe, to its detriment,

12

that the City would perform all necessary repairs to the roadbed by consistently maintaining the same. According to SEPTA, the City was equitably estopped from filing a cross-claim. We agreed, reasoning that "[u]ntil 1984, when the City informed SEPTA that it was no longer performing this maintenance, SEPTA could reasonably have relied on the City's assumption of that obligation and the City *would be estopped from claiming any contribution* from SEPTA for the [plaintiffs'] claim." 590 A.2d at 47 (emphasis added).

However, we noted that the lease-leaseback agreement required SEPTA to indemnify the City against *all claims* for injury or damage arising out of the maintenance of the leased properties and, contrary to SEPTA's argument, contained no exception to indemnification for damages arising from the City's own negligence, rather than SEPTA's. Therefore, we determined that, although the City was liable to the plaintiffs pursuant to section 324A of the Restatement and estopped from filing a cross-claim against SEPTA because of SEPTA's detrimental reliance on the City's gratuitously performed duty, the lease-leaseback agreement "requires SEPTA to indemnify the City for the [plaintiffs'] award." 590 A.2d at 48.[10]

In *Gardner*, a seven-year-old boy "was injured by a train on land owned by a third party after he climbed through a hole in a fence bordering railroad tracks

---

[10] SEPTA also argued that it was immune from primary or secondary liability to the plaintiffs, as well as the other governmental parties, because none of the plaintiffs' claims fell within an exception to sovereign immunity. Specifically, SEPTA argued that it could not be liable under the "real estate" exception to sovereign immunity because it did not own the street where the accident occurred. We rejected this argument, reasoning that, because the "real estate" exception applies equally to leased property, which we determined included the roadbed between and adjacent to the tracks, and SEPTA is responsible for roadbed maintenance under the lease-leaseback agreement, "SEPTA is ultimately responsible for claims, absent other defenses, brought as a result of SEPTA's failure to perform that responsibility for a dangerous condition that occurs between those tracks." *Yackobovitz*, 590 A.2d at 48.

and attempted to cross the tracks on his way to another hole in a fence on the other side of the tracks next to a municipal playground." 573 A.2d at 1017. The plaintiff alleged that the City, which owned one fence, and SEPTA, which owned the other fence, breached their duties by allowing holes in their fences to exist and failing to repair the same. The Supreme Court rejected this argument, citing *Scarborough v. Lewis*, 565 A.2d 122 (Pa. 1989), for the proposition that the City has no common law duty to plaintiffs who are injured on neighboring land to erect or repair its fences.

Nevertheless, the plaintiff sought to create a duty where none previously existed, citing, *inter alia*, section 323 of the Restatement.[11] The Supreme Court also rejected this argument, reasoning that:

> Section 323 does not apply to government, for government does not act either gratuitously or for consideration, as is required by Section 323, but pursuant to its required or discretionary duties in the process of governing. Section 323, therefore, cannot be used to create a duty that did not heretofore exist.

573 A.2d at 1020. Accordingly, the court held that, as a matter of law, recovery was barred by the Political Subdivision Tort Claims Act.

---

[11] Section 323 of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Gardner by Gardner v. Consolidated Rail Corporation*, 573 A.2d 1016, 1019-20 (Pa. 1990).

Here, the trial court reasoned that, pursuant to *Yackobovitz*, SEPTA is responsible for roadbed maintenance for the section of the road between the rails and the eighteen inches on each side of the rails; however, it noted that, in limited instances, the City may be liable for maintenance and repair of the sections which would normally fall under SEPTA's responsibility. According to the trial court, the basis for liability in *Yackobovitz* was "the City's negligent performance of maintenance and failure to notify [SEPTA] . . . ." (Trial court op. at 6.) The trial court determined that the City's conduct in the present matter, i.e., failing to notify SEPTA of the alleged defect, which was its regular practice, and failing to properly repair the alleged defect, "should be considered a potential basis for liability." (Trial court op. at 7.) Moreover, although the trial court determined that the record evidence established a voluntary undertaking by the City, the trial court concluded that the Restatement did not impose a new duty on the City. Rather, according to the trial court, the City's conduct in failing to notify SEPTA of the alleged defect "estopped it from shifting the duty of maintenance and repair of 11th Street to SEPTA." (Trail court op. at 7.)

Unfortunately, the trial court misread our decision in *Yackobovitz* and conflated the concepts that were at issue therein. First, in *Yackobovitz*, unlike the trial court, we expressly held that section 324A of the Restatement imposed a duty on the City, allowing the plaintiffs to maintain suit and recover damages against the City notwithstanding the Supreme Court's apparent rejection of that theory in *Gardner*.[12]

_____

[12] Although *Yackobovitz* and *Gardner* involved different sections of the Restatement, notably absent from our decision in *Yackobovitz* is any discussion of, or citation to, *Gardner*. Nevertheless, we believe our Supreme Court's decision and analysis governs. That is, the government does not act gratuitously and, therefore, the Restatement cannot be used to create a duty where none exists.

15

*Yackobovitz*, 590 A.2d at 47. Contrary to the trial court's analysis, the basis for liability in *Yackobovitz* was not the City's failure to notify SEPTA of an alleged defect; the basis for liability was the City's failure to properly perform its voluntarily assumed duty under the Restatement. The trial court's characterization of the City's failure to notify highlights its misunderstanding of *Yackobovitz*: the failure to notify was not a basis for liability; the failure to notify only estopped the City from pursuing a cross-claim against SEPTA. In other words, whether the City failed to notify SEPTA had no bearing on the determination of whether the City owed a duty to the plaintiff because we held that the City's duty derived from the Restatement; rather, the notification analysis was relevant to the determination whether SEPTA's reliance on the City's continued maintenance was reasonable such that the City was equitably estopped from pursuing a cross-claim against SEPTA.[13] Prior to the notification, SEPTA's reliance on the City to perform maintenance was reasonable. After the notification, SEPTA's reliance on the City's performance was unreasonable.

Moreover, the trial court made much of the City's voluntary undertaking in the present matter. However, as noted above, the voluntary-undertaking analysis

---

[13] Insofar as the trial court read *Yackobovitz* as endorsing the proposition that the City was estopped from shifting the duty of maintenance to SEPTA because it failed to notify SEPTA of the alleged defect, we disagree. *Yackobovitz* expressly states that the duty of maintenance and repair of the roadbed within eighteen inches of the trolley rails lies with SEPTA after execution of the lease-leaseback agreement. 590 A.2d at 46 ("The structure of the transaction—SEPTA to the City to SEPTA—of the transit facilities, clearly indicates that the parties intended the maintenance responsibilities for the street railway roadbed to end where they began—with SEPTA."). Without the imposition of a duty pursuant to the Restatement, which was the basis for liability in *Yackobovitz* and is prohibited by *Gardner*, the City has no duty to maintain the roadway within eighteen inches of the rails and, therefore, no duty could be shifted or estopped from shifting. Moreover, as articulated above, our estoppel discussion in *Yackobovitz* pertained to the City's ability to pursue a cross-claim, not to the parties' respective duties.

16

in *Yackobovitz* was relevant to whether the City assumed a duty under the Restatement. The trial court, citing *Gardner*, expressly stated that it was not imposing a duty on the City pursuant to the Restatement. Therefore, the trial court's voluntary-undertaking discussion is misguided and its analysis incorrect. A voluntary undertaking may subject the actor to liability under the Restatement. However, the Supreme Court expressly rejected applying this theory to government actors. *Gardner*, 573 A.2d at 1020.

Accordingly, because Lacava failed to establish that the City breached a duty sufficient to establish a common law negligence claim, the trial court committed an error of law in denying the City's motion for judgment n.o.v.[14]

## II. SEPTA's argument that Lacava failed to establish that a defective condition of the rail existed sufficient to constitute a defect of SEPTA's real estate and fall within the "real estate" exception to sovereign immunity

Section 8522(b)(4) of the Sovereign Immunity Act states that the defense of sovereign immunity shall not be raised to claims for damages caused by:

> **(4) Commonwealth real estate, highways and sidewalks.**--A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

---

[14] Based on our determination, we need not consider whether Lacava's claim falls within the "streets" exception to governmental immunity, nor need we reach the City's cross-claim against SEPTA for indemnification pursuant to the lease-leaseback agreement.

17

42 Pa.C.S. §§ 8522(b)(4).

"[A] claim for damages for injuries caused by a substance or an object on Commonwealth real estate must allege that the dangerous condition 'derive[d], originate[d] or ha[d] its source [in] the Commonwealth realty' itself, if it is to fall within the Sovereign Immunity Act's real estate exception." *Jones v. Southeastern Pennsylvania Transportation Authority*, 772 A.2d 435, 443 (Pa. 2001) (citation omitted). "[A]ssuming all other requirements of the statutory exception at 42 Pa.C.S. § 8522(b)(4) are met, the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair or design." *Id.* at 443-44.

SEPTA argues that Lacava failed to present any evidence that there was a defect of the rail itself that caused his injury; there was no evidence that the rail was improperly designed, improperly constructed, or badly maintained. At best, Lacava established that the street was badly maintained, deteriorating, or crumbling and formed a pothole that caused his injuries. According to SEPTA, the rail was not "raised" out of the ground; rather, it was "exposed" due to a depression in the street below and adjacent to the rail.

In its Pa.R.A.P. 1925(a) opinion, the trial court reasoned as follows:

> In the instant matter, the court allowed the duly-deliberated findings and verdict of the jury to stand. The Plaintiff presented testimony regarding an alleged defect of SEPTA's property (i.e. the trolley tracks and surrounding 18 inches) that constituted a dangerous condition of which SEPTA had either actual or constructive notice. In the Plaintiff's case-in-chief, the jury heard testimony from Walter Kusen, a representative for SEPTA. Mr. Kusen testified that SEPTA owned the Route 23 trolley tracks on 11th Street and was responsible for maintenance on those

18

trolley lines and certain repairs along the lines. After the Plaintiff's accident, Mr. Kusen went to 11th and Cantrell to conduct an inspection of the area. **Upon inspection, Mr. Kusen observed there was a section of pavement that was depressed and exposed approximately one to two-and-a-half inches of the trolley rail**. Mr. Kusen testified that **this exposed rail** "could cause a problem" and could possibly cause a problem for someone, like the Plaintiff, who was operating a motor scooter in the area.

Plaintiff also elicited testimony for the jury's consideration that SEPTA **had actual or constructive notice of the dangerous condition of the exposed rail**. After being shown pictures of the intersection of 11th and Cantrell Streets from August 2009 and June 2011, Mr. Kusen agreed that patchwork or road work was completed on the track lines by either the City or SEPTA during that two-year timespan. Mr. Kusen testified that he did not know [sic] who completed the work and whether SEPTA inspected the work to ensure it was completed properly. Mr. Kusen went on to testify that SEPTA no longer conducted routine inspections of the discontinued Route 23 trolley line, although SEPTA still retained responsibility for the trolley tracks.

Considering the evidence presented to the jury, the trial court denied SEPTA's motion for a Directed Verdict as the Plaintiff presented sufficient evidence to allow for a jury to find there was a dangerous condition, which SEPTA had notice of, under the streets exception to sovereign immunity. Under the applicable standard of review, the trial court took all evidence in a light most favorable to the Plaintiff, accepted all evidence that supported his argument, and rejected any adverse testimony. As a result, the court determined a directed verdict would be inappropriate. Likewise, a new trial would have also been improper as the jury's verdict was not so contrary as to shock one's sense of justice in light of the evidence presented at trial.

(Trial court op. at 11-12) (internal citations omitted) (emphasis added).

Here, as the trial court noted, the record evidence indicates that the alleged dangerous condition of SEPTA's real estate was an exposed rail. However,

the rail's exposure does not constitute a dangerous condition that derives or originates in the realty itself. *See Jones*, 772 A.2d at 443. Rather, as the trial court aptly noted, the exposure of the rail occurred because "there was a section of pavement that was depressed and exposed . . . the trolley rail." (Trial court op. at 11.) This characterization indicates that the purportedly dangerous condition derived from the depressed pavement, not from the rail itself. Indeed, the trial court's description of the dangerous condition lends itself more to the dangerous condition contemplated by section 8522(b)(5) of the Sovereign Immunity Act, rather than section 8522(b)(4). *See* 42 Pa.C.S. §8522(b)(5) ("A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements . . . ."); *see also Cressman v. Department of Transportation*, 538 A.2d 992, 994 (Pa. Cmwlth. 1988) ("We believe that potholes or sinkholes, as used in Section 8522(b)(5), are intended to encompass any such holes in the roadway caused by deterioration resulting from a combination of water, freezing and thawing and traffic."). Moreover, the "real estate" exception expressly excludes dangerous conditions enumerated in the "pothole" exception.

Because Lacava failed to present sufficient evidence establishing a dangerous condition of the trolley rail sufficient to fall within the "real estate" exception to sovereign immunity, there was no basis for the jury to conclude that Lacava's claims fell within the "real estate" exception to sovereign immunity. Accordingly, the trial court's decision denying judgment n.o.v. on these grounds was erroneous.

20

**III. SEPTA's argument that Lacava failed to establish that it had actual written notice of the allegedly dangerous condition sufficient to fall within the "potholes" exception to sovereign immunity under 42 Pa.C.S. §8522(b)(5)**

Section 8522(b)(5) of the Sovereign Immunity Act states that the defense of sovereign immunity shall not be raised to claims for damages caused by:

> **(5)     Potholes and other dangerous conditions.**--A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition.     Property damages shall not be recoverable under this paragraph.

42 Pa.C.S. §8522(b)(5).

Exceptions to immunity must be strictly construed. *Jones*, 772 A.2d at 440. The alleged possibility of actual written notice is insufficient to satisfy the statutory requirement. *See Stevens v. Department of Transportation*, 492 A.2d 490, 493 (Pa. Cmwlth. 1985) (stating that inference of actual written notice is insufficient to satisfy statutory standard); *see also Detweiler v. Department of Transportation* (Pa. Cmwlth., No. 2027 C.D. 2015, filed March 30, 2016) (citation omitted).[15]

SEPTA asserts that Lacava failed to submit any evidence that it received actual written notice of the alleged dangerous condition. According to SEPTA, Lacava's argument regarding notice is premised entirely on inference. Specifically,

---

[15] Although not binding precedent, unreported decisions may be cited for persuasive value pursuant to section 414(a) of this Court's internal operating procedures. 210 Pa. Code §69.414(a).

the purported notice is based on the fact that: either the City or SEPTA performed maintenance/repairs at the subject area; the City maintained that it did not perform the work; SEPTA's witness stated that, when it performs the work, a work order or invoice is created; therefore, there should be either work orders or invoices associated with the work, constituting actual written notice of the dangerous condition.

Lacava maintains that SEPTA's discovery failure precluded him from establishing actual written notice and, therefore, SEPTA's argument to the contrary should be ignored. Nevertheless, according to Lacava, the post-trial documents that SEPTA disclosed indicate that SEPTA had actual notice of the dangerous condition because the documents establish that SEPTA had crews working on 11th Street from Porter to Ritner, and on 11th between Jackson and Snyder. Lacava maintains that, because Cantrell (the accident location) is between Jackson and Snyder, SEPTA would have had actual notice of the dangerous condition.

Here, the record contains insufficient evidence to establish that SEPTA received actual written notice of the alleged dangerous condition at 11th and Cantrell Streets. Although the City's witness, Scott Helms, testified that the City received a complaint on May 22, 2013, approximately two months prior to Lacava's accident, regarding a deep pothole abutting the trolley tracks at 11th and Cantrell, he stated that the City did not forward the complaint to SEPTA. Rather, Helms explained that the City responded to the complaint and performed repair work at the identified location.

Lacava's assertion concerning SEPTA's post-trial disclosure does not impact our conclusion that the record contains insufficient evidence to establish that SEPTA received actual written notice of the alleged dangerous condition. Even if the post-trial records had been previously produced, they only suggest that SEPTA performed maintenance and repair work near the accident location. At best, this

22

evidence suggests that SEPTA may have observed the dangerous condition at the accident site. However, this is insufficient to satisfy the statutory standard of "actual *written* notice of the dangerous condition . . . ." 42 Pa.C.S. §8522(b)(5) (emphasis added).

Because the record contains insufficient evidence establishing that SEPTA had actual written notice of the alleged dangerous condition, there was no basis for the jury to conclude that Lacava's claim fell within the "pothole" exception to sovereign immunity. Accordingly, the trial court's decision to deny SEPTA's post-trial motion for judgment n.o.v. on these grounds was erroneous.[16]

## IV. Lacava's argument that the trial court erred in failing to allow him to amend his complaint to add claims for punitive damages and civil rights violations

Pa.R.C.P. No. 1033 states that:

> A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. No. 1033.

A trial court has discretion whether to allow amended pleadings and its decision will not be reversed absent a clear abuse of discretion. *Weaver v. Franklin*

---

[16] Based on our determination, we need not address SEPTA's additional arguments.

*County*, 918 A.2d 194, 203 (Pa. Cmwlth. 2007). "[A]n amendment is properly refused where it appears amendment is futile." *Id*.

"Leave to amend a complaint will be withheld where the initial complaint reveals that the prima facie elements of a claim cannot be established and where the defects are so substantial that amendment is not likely to cure the defects." *Simmons v. Township of Moon*, 601 A.2d 425, 432 (Pa. Cmwlth. 1991). Importantly, SEPTA is considered a Commonwealth agency and, as such, is immune from the imposition of punitive damages because the same would burden taxpayers and citizens for whose benefit the wrongdoer is being chastised. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 517 A.2d 1270, 1276 (Pa. 1986).

Lacava directs this Court's attention to *Dodd v. SEPTA* (E.D. Pa., No. 06-4213, filed July 24, 2008), where a federal district court allowed a plaintiff to pursue civil rights claims against SEPTA. Lacava maintains that *Dodd* supports his assertion that amendment should be allowed in the present matter and punitive damages should be imposed.

Here, SEPTA is considered a Commonwealth agency and *Feingold* expressly prohibits the imposition of punitive damages against Commonwealth agencies. Therefore, punitive damages may not be imposed on SEPTA, amendment for that purpose would be futile, and the trial court's determination in that regard was proper.

Regarding Lacava's argument that amendment should be allowed to pursue civil rights violations, the present matter is distinguishable from *Dodd* in that, there, the plaintiff established a prima facie case for a section 1983[17] action. However, here, the trial court determined that Lacava failed to establish a prima facie

_____
[17] 42 U.S.C. §1983.

24

case for a federal civil rights action, which is a sufficient basis to refuse amendment. *Simmons*, 601 A.2d at 432. Similarly, the trial court determined that any state civil rights action was barred by immunity, thereby rendering amendment futile. We discern no abuse of discretion in the trial court's resolution of this issue.

## Conclusion

The trial court's refusal to grant the City's post-trial motion for judgment n.o.v. was erroneous because Lacava failed to establish that the City breached a duty sufficient to establish a common law negligence claim. The trial court also erred in refusing to grant SEPTA's post-trial motion for judgment n.o.v. because Lacava failed to present sufficient evidence establishing a dangerous condition of the trolley rail sufficient to fall within the "real estate" exception to sovereign immunity. Similarly, the trial court erred in refusing to grant SEPTA's post-trial motion for judgment n.o.v. because Lacava failed to establish that SEPTA received actual written notice of the alleged dangerous condition sufficient to fall within the "pothole" exception to sovereign immunity. However, the trial court's determination denying Lacava's post-trial motion to amend his complaint was proper.

Accordingly, the trial court's orders are affirmed, in part, and reversed, in part.

_____
PATRICIA A. McCULLOUGH, Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Lacava | : | |
| | : | |
| v. | : | No. 96 C.D. 2016 |
| | : | |
| Southeastern Pennsylvania | : | |
| Transportation Authority | : | |
| | : | |
| v. | : | |
| | : | |
| City of Philadelphia, | : | |
| Appellant | : | |
| | | |
| Joseph Lacava | : | |
| | : | |
| v. | : | No. 119 C.D. 2016 |
| | : | |
| Southeastern Pennsylvania | : | |
| Transportation Authority and | : | |
| City of Philadelphia | : | |
| | : | |
| Appeal of: Southeastern Pennsylvania | : | |
| Transportation Authority | : | |
| | | |
| Joseph Lacava, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 120 C.D. 2016 |
| | : | |
| SEPTA and City of Philadelphia | : | |

## *ORDER*

AND NOW, this 29th day of March, 2017, the December 21, 2015 orders of the Court of Common Pleas of Philadelphia County are affirmed, in part, and reversed, in part, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge