# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Page,                    :
          Petitioner      :
                         :
      v.                  :
                         :

| | |
|---|---|
| Honorable Thomas P. Rogers; Montgomery County District Attorney Michael Toal, III; Secretary of Department of Corrections, Dr. Laurel R. Harry; and Attorney Michael P. Gottlieb, | : : : : : : : |
| Respondents | : No. 164 M.D. 2023 : Submitted: May 7, 2024 |

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE COVEY                         FILED:  August 27, 2024

Before this Court are the Honorable Thomas P. Rogers' (Judge Rogers), Attorney Michael P. Gottlieb's (Attorney Gottlieb), and the Department of Corrections (Department) Secretary Dr. Laurel R. Harry's (Secretary Harry) (collectively, Respondents) Preliminary Objections to Joseph Page's (Page) Petition for Review seeking a declaratory judgment and injunctive relief (Petition).  After review, this Court sustains Respondents' Preliminary Objections and dismisses the Petition as to them.[1]

---

[1] Montgomery County District Attorney Michael Toal, III (Toal), has not filed preliminary objections to the Petition.  Notably, Page does not direct any specific allegations in the Petition against Toal.  Therein, Page merely states: "The district attorney is the chief law enforcement officer for the county in which [he is] elected."  Petition at 2.  In his brief opposing Attorney Gottlieb's Preliminary Objections, Page adds: "In the case at bar, the state, through and by [Toal] provided [] Attorney Gottlieb to represent the indigent petitioner Page."  Page Br. in Opp'n to

**Background**[2]

On April 13, 2010, Page was sentenced to life in prison plus 40 to 80 years for second degree murder, robbery, burglary, and criminal conspiracy, and is currently incarcerated at the State Correctional Institution at Forest (SCI-Forest).[3] *See* Petition at 3.

On September 10, 2015, Page filed a Post Conviction Relief Act (PCRA)[4] petition in the Montgomery County Common Pleas Court (trial court). *See* Petition App. A (Affidavit/Statement of Facts) at 1. The trial court appointed Attorney Gottlieb as Page's PCRA counsel. *See id.* At some point thereafter, Attorney Gottlieb filed an application to withdraw as Page's counsel and issued a no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) (*Turner* Letter)[5] in support thereof. *See* Petition App. A at 1. Despite repeated

---

Attorney Gottlieb's Prelim. Objs. at 3. Page purportedly served the Petition on Toal by certified mail on March 23, 2023. *See* Petition Certificate of Service. If Page did, Toal was obligated to file a responsive pleading within 30 days. *See* Pennsylvania Rule of Appellate Procedure 1516(b), Pa.R.A.P. 1516(b) (relating to responsive pleadings allowed) and Pennsylvania Rule of Civil Procedure 1028, Pa.R.Civ.P. 1028 (relating to preliminary objections).

[2] The facts are as Page alleges in the Petition.

[3] *See* www.inmatelocator.cor.pa.gov/#/Result (last visited Aug. 26, 2024); *see also Commonwealth v. Page*, Montgomery Cnty. CP-46-CR-0001914-2009.

[4] 42 Pa.C.S. §§ 9541-9546.

[5]     Through this type of letter, an attorney seeks to withdraw from representation of a[n inmate] because "the [violator's] case lacks merit, even if it is not so anemic as to be deemed wholly frivolous." *Com*[*monwealth*] *v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007).

Such letters are referred to by various names by courts of this Commonwealth. *See, e.g.*, *Commonwealth v. Porter*, . . . 728 A.2d 890, 893 [] n.2 ([Pa.] 1999) (referring to such a letter as a "'no merit' letter" and noting that such a letter is also commonly referred to as a "*Finley* letter," referring to the Superior Court case *Commonwealth v. Finley*, . . . 479 A.2d 568 ([Pa.] 1984)); *Zerby v. Shanon*, 964

requests to Attorney Gottlieb to provide Page with copies of his trial transcripts and other legal paperwork related to his criminal case, Attorney Gottlieb did not produce them to Page. *See id.*

On December 10, 2021, Judge Rogers conducted a hearing and granted Page leave to proceed on his PCRA petition pro se, and Page informed Judge Rogers that he still needed his legal documents. *See id.* On May 31, 2022, SCI-Forest received five boxes of legal documents directed to Page which Attorney Gottlieb provided through the Montgomery County District Attorney's office. *Id.*; *see also* Petition App. C (Judge Rogers' February 2, 2023 letter). After making numerous requests to prison staff, and filing a grievance to get his legal documents, SCI-Forest allowed Page to review two of his five boxes of documents. *See* Petition App. A at 1. At that time, Page learned when he was received a confiscation slip that "the prison officials" had seized nine compact discs (CDs). *Id.*

Page lodged a complaint with Judge Rogers concerning SCI-Forest's withholding of his remaining legal documents. *See id.* at 2. On January 13, 2023, Judge Rogers conducted a hearing and, by February 3, 2023 letter to SCI-Forest, copied to Secretary Harry, Judge Rogers requested SCI-Forest's assistance in fulfilling Judge Rogers' obligation to ensure Page has access to all of his legal documents, including the confiscated CDs. *See id.* at 2; *see also* Petition App. C

---

A.2d 956, 960 (Pa. Cmwlth. 2009) ("*Turner* [L]etter"); *Commonwealth v. Blackwell*, 936 A.2d 497, 499 (Pa. Super. [] 2007) ("*Turner/Finley* letter").

*Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 25 n.2 (Pa. Cmwlth. 2009).

*Anderson v. Pa. Bd. of Prob. & Parole*, 237 A.3d 1203, 1204 n.2 (Pa. Cmwlth. 2020); *see also Commonwealth v. Bradley*, 261 A.3d 381, 395 n.14 (Pa. 2021) ("When counsel concludes that a PCRA petitioner has no viable issues, counsel is required to submit a letter to the PCRA court explaining the basis for his no-merit conclusion.").

(Judge Rogers' February 2, 2023 letter). As of March 2023, Page had yet to receive his legal documents. *See* Petition App. A at 2.

In addition, "at the behest of Chief [L]egal Counsel for the Department[,]" Petition at 9, "prison officials" at SCI-Forest had "removed all of the model form petitions/motions which [SCI-Forest] would provide to assist [Page] in accessing the [c]ourt[s] in a meaningful way," and "removed law books and other reference materials from the law library (including form motions and petitions) that were previously available . . . ." Petition App. A at 2. Page also felt that his "life and health [were] at risk as the Department . . . [could not] adequately protect [him] from the COVID-19 virus and its varients [sic.]" *Id*.; *see also* Petition App. B (newspaper articles recounting inmate deaths related to overcrowding and COVID-19).

## Facts

On March 24, 2023, Page, pro se, filed the Petition in this Court's original jurisdiction. Therein, Page asserts that his current confinement conditions violate the Eighth Amendment to the United States (U.S.) Constitution's (Eighth Amendment)[6] ban on cruel and unusual punishment because of SCI-Forest's overcrowding and potential COVID-19 exposure.[7] *See* Petition at 5-6. In addition, Page contends that Judge Rogers lacked subject matter jurisdiction over his criminal

---

[6] U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *see also* PA. CONST. art. 1, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."). The Eighth Amendment "applies to the [s]tates through the Due Process Clause of the Fourteenth Amendment[," U.S. Const. amend. XIV, § 1 ("No [s]tate . . . shall . . . deprive any person of life, liberty, or property, without due process of law[.]")]. *Wilson v. Seiter*, 501 U.S. 294, 296 (1991).

[7] Page acknowledges that his COVID-19-related claims could not be raised in a PCRA petition because the circumstances that gave rise to his claims did not exist before the PCRA limitations period expired. *See* Petition at 6.

case and failed to specify in Page's 2010 sentencing order the basis on which he imposed Page's sentence in 2010, so his sentence was not lawfully imposed. *See* Petition at 8. Page also declares that, when seeking to withdraw as Page's counsel, Attorney Gottlieb's *Turner* Letter "exposed not only [] confidential communications," but Page's strategy. Petition at 9. Further, Page claims that "prison officials at [SCI-]Forest" "impinge[d] on [his] First Amendment right [under the U.S. Constitution (First Amendment)[8]] to freedom of speech, access to the courts, and his Sixth Amendment right [under the U.S. Constitution (Sixth Amendment)[9]] to effective communications" by withholding five boxes of his legal documents and removing legal books and model form legal papers and motions from SCI-Forest's law library, which "prejudice[d] his ability to bring his pro se PCRA matters before the [trial court] and [Judge] Rogers in any meaningful way." Petition at 9 (italics omitted). In the Petition, Page seeks a declaration from this Court that Respondents' acts and/or omissions violated his rights under the U.S. and Pennsylvania Constitutions and asks this Court for preliminary and permanent injunctions directing SCI-Forest prison officials to return his legal documents and to restore the model form legal papers and motions to the SCI-Forest law library.[10]

On April 24, 2023, Judge Rogers filed Preliminary Objections asserting that the Petition fails to state a valid legal claim against him in his official capacity because Page does not seek any direct relief against him, Judge Rogers has judicial

---

[8] U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the [g]overnment for a redress of grievances.").

[9] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for defen[s]e.").

[10] Also on March 24, 2023, Page filed a Motion for Leave to Proceed *in Forma Pauperis* (IFP Motion). On April 3, 2023, this Court requested that Page supply his inmate account statement, which he did on April 14, 2023. On April 26, 2023, this Court granted the IFP Motion.

immunity, and Page cannot collaterally attack his sentence in this Court. Despite that Judge Rogers' Preliminary Objections contain a notice to plead, Page did not file an answer to thereto.[11]

On April 27, 2023, Attorney Gottlieb filed Preliminary Objections, contending that Page failed to state a valid claim against him because Page does not seek any direct relief against him, and because only the trial court - not this Court - has jurisdiction to review Page's challenge to Attorney Gottlieb's *Turner* Letter. Attorney Gottlieb filed a brief in support of his Preliminary Objections. On June 6, 2023, Page filed his answer opposing Attorney Gottlieb's Preliminary Objections.

On June 8, 2023, Secretary Harry filed Preliminary Objections to the Petition, asserting that Page failed to state a valid legal action against her because: she was not personally involved in the actions he claims violated his constitutional rights and she is not vicariously liable therefor; she is immune from this litigation; Page failed to state a valid First Amendment violation claim against her; Page failed to state a valid Eighth Amendment claim against her; and Page has not alleged any actual injury. Secretary Harry filed a brief in support of her Preliminary Objections. On July 11, 2023, Page filed an answer opposing Secretary Harry's Preliminary Objections.

On August 18, 2023, Page filed his brief in opposition to Respondents' Preliminary Objections, wherein he added that "this action [] is not an illicit 'second bite at the apple' as [] Respondents imply, but rather, similar in nature to a federal [action under] Section 1983 [of the Civil Rights Act of 1871 (Section 1983)[12]]

---

[11] On July 25, 2023, Page filed a motion to compel Judge Rogers to answer the Petition. On September 14, 2023, this Court ordered that Page's Motion to Compel Answer would be decided with the merits of Respondents' Preliminary Objections.

[12] Section 1983 provides:

seeking relief for violations and deprivations of Page's constitutional rights."  Page Br. at 6.  Page further requests that this Court grant him leave to amend the Petition if it sustains Respondents' demurrers.  *See id*. at 5.

This matter is now ripe for this Court's review.

## Discussion

Initially, Pennsylvania Rule of Civil Procedure (Civil Rule) 1028(a)(4) authorizes any party to file preliminary objections to a pleading based on its "legal insufficiency" (demurrer).  Pa.R.Civ.P. 1028(a)(4).

> "The question presented in a demurrer is whether, on the facts averred, the law indicates with certainty that no recovery is possible.  In ruling on preliminary objections in the nature of a demurrer, this Court accepts as true all well-pleaded facts in the [petition for review] and draws all inferences reasonably deducible therefrom in favor of the nonmoving party. *Stone & Edwards Ins. Agency, Inc. v. Dep't of Ins.*, . . . 616 A.2d 1060, 1063 ([Pa. Cmwlth.] 1992).  However, we "need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id*. . . .

*Vasquez v. Berks Cnty.*, 279 A.3d 59, 75-76 (Pa. Cmwlth. 2022).

"When ruling on a demurrer, [this C]ourt must confine its analysis to the [petition for review]." *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010).  "Thus, the [C]ourt may determine only whether, on the basis of the

---

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate . . . subjects, or causes to be subjected, any citizen of the [U.S.] or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Page does not assert a Section 1983 claim in the Petition or the documents appended thereto.

[petitioner's] allegations, he or she possesses a cause of action recognized at law." *Fraternal Ord. of Police Lodge No. 5, by McNesby v. City of Phila.*, 267 A.3d 531, 541 (Pa. Cmwlth. 2021). "[D]ocuments attached as exhibits [and] documents referenced in the [petition for review], as well as facts already of record[,] may also be considered." *Id.* at 542.

### 1. Judge Rogers' Preliminary Objections

Page contends in the Petition that Judge Rogers lacked jurisdiction over his criminal case and imposed an unlawful sentence. Judge Rogers objects on the basis that the Petition fails to state a valid legal claim against him because: Page does not seek any direct relief against Judge Rogers, other than as part of his general request that all Respondents violated his constitutional rights; "immunity precludes [] claims [against Judge Rogers acting in his judicial capacity;]"[13] and "[Page] cannot collaterally attack his criminal case in this Court[.]" Judge Rogers' Prelim. Objs. ¶ 6. Judge Rogers attached Page's criminal docket to his supporting brief[14] and argued:

---

[13]        Generally, . . . when not objected to in preliminary objections, . . . it is now currently accepted that immunity is a defense that may be raised by preliminary objection "when to delay a ruling thereon would serve no purpose." *Faust v. Dep't of Revenue*, . . . 592 A.2d 835, 838 n.3 ([Pa. Cmwlth.] 1991).

*Chasan v. Platt*, 244 A.3d 73, 81 (Pa. Cmwlth. 2020). Here, Page did not object by way of a preliminary objection to Judge Rogers's immunity defense being included in preliminary objections.

[14] Civil Rule 1019(g) provides, in relevant part: "A party may incorporate by reference any matter of record in any [s]tate or [f]ederal court of record whose records are within the county in which the action is pending[.]" Pa.R.Civ.P. 1019(g). Where, as here, Page expressly referenced and challenged his underlying criminal action in the Petition, this Court will take judicial notice of the docket related thereto. *See also Solomon v. U.S. Healthcare Sys. of Pa., Inc.*, 797 A.2d 346, 352 (Pa. Super. 2002) ("[A] court may take judicial notice of public documents in ruling on a preliminary objection in the nature of a demurrer.").

This Court does not have jurisdiction to hold that [Page's] sentence is improper or issue any other ruling pertaining to claimed errors in the criminal case. For that reason, [Page's] arguments about his sentence must be made in his criminal case, not this collateral matter. Indeed, [Page] has a pending [PCRA] petition in the criminal case.

Judge Rogers' Br. at 3-4.

This Court has declared:

"[J]udicial immunity requires a two-part analysis: first, whether the judge has performed a **judicial act**; and second, whether the judge has some **jurisdiction** over the subject matter before [him]." *Langella v. Cercone*, 34 A.3d 835, 838 (Pa. Super. 2011) (emphasis added). This Court reasoned: "Judges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice, provided there is not a clear absence of all jurisdiction over subject matter and person." *Robinson v. Musmanno* (Pa. Cmwlth.[] No. 39 C.D. 2010, filed May 28, 2010), slip op. at 3, . . . (unreported)[15] (*per curiam*) (citing *Beam v. Daihl*, 767 A.2d 585 (Pa. Super. 2001)).

This Court recognizes judicial immunity is not only immunity from damages, but also "immunity from suit." *See Guarrasi v. Scott*, 25 A.3d 394, 405 n.11 (Pa. Cmwlth. 2011) (citing *Mireles v. Waco*, 502 U.S. 9 . . . (1991)) (explaining judicial immunity applied to a common pleas court judge); *Logan* [*v. Lillie*, 728 A.2d 995 (Pa. Cmwlth. 1999)] (upholding dismissal of equitable claims seeking declaration that judicial officers' acts were unconstitutional). As such, judicial immunity is an available defense for declaratory relief. *See Guarrasi*; *Logan*; *accord Azubuko v. Royal*, 443 F.3d 302 (3d Cir. 2006).

*Chasan v. Platt*, 244 A.3d 73, 81-82 (Pa. Cmwlth. 2020) (footnotes omitted).

---

[15] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a). The unreported cases included herein are cited for their persuasive value.

9

Certainly, "presiding over . . . criminal proceedings is a judicial function that falls squarely within the category of protected judicial acts." *Langella*, 34 A.3d at 839. In addition, "all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code[,]"[16] *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2004), within "the territorial boundaries of the judicial district in which it sits . . . ." *Id.* at 1075. Here, where Page's claims against Judge Rogers stem from judicial acts related to Page's criminal case over which Judge Rogers had subject matter jurisdiction, Judge Rogers has judicial immunity.

Moreover, although Page insists that he is not seeking a second bite at the apple by impermissibly challenging his criminal sentence in this Court, *see* Page Br. at 6, the Petition belies Page's position. Therein, Page questions whether "life without the possibility of parole (death by incarceration) [is] unconstitutional[,] in violation of the Eighth and Fourteenth Amendments and their state constitutional counterparts relative to [] Page specifically[]" (Petition at 4); he declares that he "is arguing [] the severity of a prison sentence" (Petition at 6); and he contends that his "sentence [was] not [] lawfully imposed pursuant to any authorized statute." (Petition at 8). Page expounds in his brief:

> Even assuming [] Page could raise these issues below, it would subject him to the very dangers he seeks to avoid[] and deprive him of the opportunity to raise his claims and have them heard by a Judge and Judges other than [Judge Rogers] who originally violated [Page's] rights. Such problems cannot be cured by raising them in the [trial court].

Page Br. at 6-7.

This Court has expressly ruled:

> [Inmates] may not collaterally attack their sentences by using a civil action in this Court seeking declaratory and

---

[16] 18 Pa.C.S. §§ 101-9546.

10

injective relief. *See also Guarrasi . . .*, 25 A.3d [at] 402 . . . (observing that plaintiff "may not use a civil action for declaratory judgment in our original jurisdiction to collaterally attack the legality of his criminal proceedings" and reiterating that "[t]he PCRA is the sole means by which . . . persons serving illegal sentences may obtain collateral relief") (internal quotation marks and citations omitted).

*Scott v. Pa. Bd. of Prob. & Parole*, 256 A.3d 483, 492-93 (Pa. Cmwlth. 2021), *aff'd*, 284 A.3d 178 (Pa. 2022).

Page has a PCRA action pending in the trial court. *See* Petition at 3 ("[Page] incorporates his PCRA petition"); *see also* Judge Rogers' Br. at 4. Notwithstanding, "in an effort to invoke [] original jurisdiction, [Page has also] presented [his] sentencing claims in the context of a "Petition for Review in the Nature of a Complaint Seeking Declaratory Judgment and [Preliminary and Permanent] Injunctive Relief." *Scott*, 256 A.3d at 491. Thus, Page has "fashioned the Petition in this manner in a thinly veiled attempt to forum shop through pleading, which we will not countenance." *Id*. at 492. "[T]his Court has already rejected [] challenge[s] remarkably similar to this one on the basis that it constituted a collateral attack on a criminal sentence." *Id*.; *see also Hill v. Commonwealth* (Pa. Cmwlth. No. 152 M.D. 2008, filed Sept. 26, 2008), 2008 WL 9396706, at *1, ([T]he petitioner's "collateral attack on his sentence . . . must be brought under the PCRA and not as a complaint for declaratory judgment and injunctive relief in this Court's original jurisdiction."). Accordingly, Page's claims that Judge Rogers' sentencing order was unlawful is not properly before this Court.[17]

---

[17] To the extent Page attempts to include COVID-19 exposure as a harsh condition of his sentence, *see* Petition at 6, this Court agrees with the Pennsylvania Superior Court's observation that where, as here, the inmate's sentence began before the COVID-19 pandemic spread in the spring of 2020, "[t]he pandemic is not related to the trial court's authority to impose the sentence, and thus cannot be the basis of any alleged illegality." *Commonwealth v. Gillums*, 249 A.3d 1172 (Pa. Super. No. 1601 EDA 2019, filed Feb. 22, 2021) (unreported), slip op. at 15.

Based on the foregoing, this Court sustains Judge Rogers' Preliminary Objections.

## 2. Attorney Gottlieb's Preliminary Objections

In the Petition, Page declares that Attorney Gottlieb's *Turner* Letter improperly "exposed not only [] confidential communications," but also Page's litigation strategy and, thus, violated the attorney-client privilege without his consent.[18] Petition at 9. Attorney Gottlieb objects on the basis that this Court lacks jurisdiction because Page may only attack his *Turner* Letter and circumstances surrounding it in the trial court.[19]

Pennsylvania Rule of Criminal Procedure (Criminal Rule) 904(C) provides: "[W]hen an unrepresented defendant satisfies the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief."[20] Pa.R.Crim.P. 904(C). Rule 904(F)(2) states: "[T]he appointment of counsel shall be effective throughout the post-conviction collateral proceedings,

---

[18] In his answer to Attorney Gottlieb's Preliminary Objections, Page added the argument that by appointing Attorney Gottlieb to represent him, the Commonwealth was both prosecuting and defending him, which was a conflict of interest. *See* Page Answer to Attorney Gottlieb Prelim. Objs. at 3. However, because Page did not raise that issue in the Petition, and this Court's review is limited to the allegations in the Petition and documents attached thereto, *see Vasquez*; *see also McNesby*, this Court will not address that argument.

[19] Page responds that Attorney Gottlieb waived his jurisdictional argument because he failed to raise it in his Preliminary Objections. *See* Page Br. in Opp'n to Attorney Gottlieb Prelim. Objs. at 3. However, Attorney Gottlieb specified in his Preliminary Objections: "[Page] cannot attack a *Turner*[] [L]etter before the Commonwealth Court, but rather may only attack same in the [trial court], and therefore the Petition . . . fails to state a claim for which relief can be granted." Attorney Gottlieb's Prelim. Objs. ¶ 6. Because Attorney Gottlieb raised the jurisdiction claim in his Preliminary Objections, Page's waiver argument lacks merit.

[20] "Although the PCRA proceedings are civil, they nonetheless involve a collateral attack upon a judgment of sentence imposed in a criminal case[ and, thus,] . . . are governed by the [Criminal] Rules . . . ." *Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa. Super. 2018).

including any appeal from disposition of the petition for post-conviction collateral relief." Pa.R.Crim.P. 904(F)(2).

> **If PCRA counsel seeks to withdraw** on the ground that the issues raised by the PCRA petitioner are without merit, he must satisfy the following requirements: **he must file a sufficient no-merit letter**, send the PCRA petitioner copies of the application to withdraw and no-merit letter, and advise the PCRA petitioner of his right to proceed pro se or with a privately retained attorney.

*Commonwealth v. Kelsey*, 206 A.3d 1135, 1139 (Pa. Super. 2019) (emphasis added; italics omitted). "The no-merit letter must set forth: [(]1) the nature and extent of counsel's review of the case; [(]2) **each issue that the petitioner wishes to raise on appeal**; and [(]3) counsel's explanation of **why each of those issues is meritless**." *Id*. (emphasis added). "[W]hen the PC[R]A court concurs, counsel will be permitted to withdraw[,] and the petitioner may proceed pro se, or by privately retained counsel, or not at all." *Turner*, 544 A.2d at 929.

Section 9545(a) of the PCRA clearly mandates: "**Original jurisdiction over a [PCRA] proceeding** . . . **shall be in the court of common pleas**." 42 Pa.C.S. § 9545(a) (emphasis added). Moreover, the Pennsylvania Superior Court has appellate jurisdiction over appeals from the trial court's final PCRA rulings.[21] *See* Section 742 of the Judicial Code, 42 Pa.C.S. § 742.

Page's PCRA petition is apparently still pending before the trial court. *See* Petition at 3 ("[Page] incorporates his PCRA petition"); *see also* Judge Rogers' Br. at 4. Attorney Gottlieb was legally mandated to file a *Turner* Letter discussing

---

[21] The Superior Court's review of PCRA rulings "is limited to [determining] whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error." *Commonwealth v. Carrera*, 289 A.3d 1127, 1132 n.6 (Pa. Super. 2023).

the merits of Page's claims in the trial court in order to withdraw as counsel.[22]  Any challenges Page had to Attorney Gottlieb's *Turner* Letter related to his PCRA proceedings must first be made to the trial court and, thereafter, appealed to the Superior Court - not this Court.  Because this Court lacks jurisdiction to review Attorney Gottlieb's PCRA-related *Turner* Letter, Page has failed to state a valid cause of action against Attorney Gottlieb.  Accordingly, this Court sustains Attorney Gottlieb's Preliminary Objections.

## 3. Secretary Harry's Preliminary Objections

Page names Secretary Harry as a party in the Petition.  However, he does not specify any action or inaction by Secretary Harry that violated his constitutional rights.  Broadly reading the Petition, it appears that Page is claiming that SCI-Forest staff, under the direction of, or as supervised by Secretary Harry, has violated his First and Sixth Amendment rights by withholding his legal documents and removing legal form petitions/motions from the law library, and his Eighth Amendment rights based on his unsafe confinement conditions - particularly overcrowding and his COVID-19 exposure risk.[23]

---

[22] Page incorporated his PCRA documents in the Petition by reference.  *See* Petition at 3 ("[Page] incorporates his PCRA petition and his complaints sent to Judge Rogers and prison officials as if fully rewritten herein in its entirety since they are having to do with the matter in question.").  However, they are not appended to the Petition.

[23] In his answer to Secretary Harry's Preliminary Objections, Page averred: "[Secretary] Harry's answer [] fails to address [Page's] Eighth Amendment claims relative to 'life without the possibility of parole,' i.e., death by incarceration, in which [her] role and position as one who 'enforces' the sentence imposed - makes her inextricably intertwined in [] Page's sentence."  Page Answer to Secretary Harry's Prelim. Objs. at 5.

However, Section 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, added by Section 4 of the Act of December 30, 1984, P.L. 1299, includes among the Department's powers and duties the "administration, management and supervision of penal and correctional facilities, programs[,] and services."  71 P.S. § 310-1.  The General Assembly authorized the Department to create rules and promulgate regulations to carry out those

Secretary Harry objects on the basis that Page failed to sufficiently assert that she was personally involved in the actions he claims violated his constitutional rights, she is immune from this litigation, and she is not vicariously liable for prison staff actions simply because she is in the chain of command or conducted an after-the-fact grievance investigation. Secretary Harry also contends that Page failed to state a valid First Amendment violation claim against her where he has not specified whose actions resulted in such violations, nor alleged any actual injury, and limiting an inmate's access to his legal documents and law library materials serve legitimate penological interests.[24] Secretary Harry further declares that Page has failed to state a valid Eighth Amendment claim where he has not alleged that she consciously ignored or took inadequate measures regarding COVID-19 threats, and the fact that SCI-Forest was not successful in eliminating all positive cases within its walls did not amount to indifference on her part as is necessary to implicate the Eighth Amendment.

---

responsibilities. *See* Section 1105(b) of the Prisons and Parole Code, 61 Pa.C.S. § 1105(b). In Section 91.2 of the Department's Regulations, it declares that its purpose is "to operate its institutions and programs to provide protection to the community, a safe and humane environment[,] and opportunities for rehabilitation for the inmates." 37 Pa. Code § 91.2. Accordingly, "the Department is not the state agency responsible for prosecuting crimes or appointing counsel. Further, the Department has no discernible role in administering the PCRA process. Therefore, . . . the Department is not the proper party to address deficiencies in [Page's] criminal and collateral proceedings[.]" *Key v. Pa. Dep't of Corr.* (Pa. Cmwlth. No. 304 M.D. 2022, filed Mar. 22, 2024), slip op. at 6 (footnote omitted).

[24] At Secretary Harry's request, this Court takes judicial notice of Department Policy DC-ADM 815 (relating to Personal Property, State Issued Items, and Commissary Outside Purchases). *See Paluch v. Pa. Dep't of Corr.*, 175 A.3d 433, 437 n.6 (Pa. Cmwlth. 2017) ("courts may take judicial notice of [the Department's] policies and handbooks, which appear on [its] official website"); *see also Hill v. Dep't of Corr.*, 64 A.3d 1159 (Pa. Cmwlth. 2013).

a. Immunity

Although, as Department Secretary, Secretary Harry is a public officer "responsible, *inter alia*, for the overall administration and operation of all of [the Department's] correctional institutions," *Hackett v. Horn*, 751 A.2d 272, 273 n.1 (Pa. Cmwlth. 2000), "pursuant to [a]rticle 1, [s]ection 11 of the Pennsylvania Constitution,[25] the General Assembly declared that 'the Commonwealth, and its officials and employees acting within the scope of their duties, shall . . . enjoy sovereign immunity and official immunity[26] and remain immune from suit except as the General Assembly shall specifically waive the immunity.' 1 Pa.C.S. §

---

[25] Article 1, section 11 of the Pennsylvania Constitution mandates:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. 1, § 11.

[26] This Court has clarified:

> While official immunity is related to the common law doctrines of sovereign and governmental immunity, it is separate both in terminology and its historical development. Sovereign and governmental immunity involve the constitutional question of the Commonwealth consenting to be sued and the effect those suits would have on the public purse, while official immunity is a doctrine that prevents the fear of personal liability from interfering with the public officials' performance of their duties. Official immunity protects the public officer from liability, even when sovereign immunity has been waived. It is personal to the officers in order to allow them to carry out their duties requiring the exercise of judgment.

*Kuzel v. Krause*, 658 A.2d 856, 858 (Pa. Cmwlth. 1995). "Consistent with the interest in unimpaired decision[-]making, [the Pennsylvania Supreme Court] believe[d] it appropriate to protect from the possibility of suit a public servant who has not him[/her]self engaged in actionable conduct. Thus, those in the 'chain of command' should not be subject to suit on any theory of vicarious responsibility." *DuBree v. Commonwealth*, 393 A.2d 293, 295 (Pa. 1978).

16

2310."[27]  *Minor v. Kraynak*, 155 A.3d 114, 121 (Pa. Cmwlth. 2017) (footnote omitted).

The U.S. Supreme Court has warned that it is essential to determine the real party in interest before assessing whether immunity applies because that "dictates what immunities may be available[,]" *Lewis v. Clarke*, 581 U.S. 155, 163 (2017), and "[i]n making this assessment, courts may not simply rely on the characterization of the parties in the [petition for review], but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 162. The U.S. Supreme Court explained:

> If . . . an action is in essence against a [s]tate even if the [s]tate is not a named party, then the [s]tate is the real party in interest and is entitled to invoke [sovereign immunity] protection. For this reason, an arm or instrumentality of the [s]tate generally enjoys the same immunity as the sovereign itself. *E.g., Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429-[]30 . . . (1997). Similarly, lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and they may also be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-[]66 . . . (1985) (internal quotation marks omitted).
>
> The distinction between individual- and official-capacity suits is paramount here. In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself. *Will v. Mich*[.] *Dep*[*']t of State Police*, 491 U.S. 58,

---

[27] The Eleventh Amendment to the U.S. Constitution, which states that "[t]he [j]udicial power of the [U.S.] shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the [U.S.] by [c]itizens of another [s]tate, or by [c]itizens or [s]ubjects of any Foreign State[,]" U.S. CONST. amend. XI, similarly "bars federal lawsuits against states and their agencies unless sovereign immunity has been expressly waived," and "extends to a state official acting in his or her official capacity . . . ." *Flagg v. Int'l Union, Sec., Police, Fire Pros. of Am., Local 506*, 146 A.3d 300, 306-07 (Pa. Cmwlth. 2016).

17

71 . . . (1989); *Dugan v. Rank*, 372 U.S. 609, 611, 620-[]22 . . . (1963). This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. *Hafer* [*v. Melo*], 502 U.S. [21,] 25 . . . [(1991)]. The real party in interest is the government entity, not the named official. *See Edelman v. Jordan*, 415 U.S. 651, 663-[]65 . . . (1974). "Personal-capacity suits, on the other hand, seek to impose *individual* liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S.[] at 25 . . . (emphasis added); *see also id.*[] at 27-31 . . . (discharged employees entitled to bring personal damages action against state auditor general); *cf. Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 . . . (1971). "[O]fficers sued in their personal capacity come to court as individuals," *Hafer*, 502 U.S.[] at 27 . . . , and the real party in interest is the individual, not the sovereign.

. . . . Defendants in an official-capacity action may assert sovereign immunity. *Graham*, 473 U.S.[] at 167 . . . . An officer in an individual-capacity action, on the other hand, may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-[]44 . . . (2009). But sovereign immunity "does not erect a barrier against suits to impose individual and personal liability." *Hafer*, 502 U.S.[] at 30-31 . . . (internal quotation marks omitted); *see Alden v. Maine*, 527 U.S. 706, 75 . . . (1999).

*Lewis*, 581 U.S. at 162-63 (citation italics added).

Moreover, "individual public employees are not vicariously liable for the actions of subordinates merely because the subordinate is in the employee's chain of command." *Fauber v. Fetterolf, Harlow & Wetzel* (Pa. Cmwlth. No. 1856 C.D. 2013, filed June 18, 2014), slip op. at 6. Thus, "[m]erely being in the 'chain of command' does not subject [a public servant manager] to suit on a theory of vicarious responsibility." *Price v. Corr. Officer Simcox* (Pa. Cmwlth. No. 307 C.D.

18

2017, filed Sept. 28, 2017), slip op. at 9 (quoting *DuBree v. Commonwealth*, 393 A.2d 293, 295 (Pa. 1978)); *see also Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010).

In the instant matter, not only was Secretary Harry not Secretary when it appears Page's First and Eighth Amendment claims arose,[28] but Page does not specify any basis on which Secretary Harry is personally liable for such alleged violations. While in the Petition Page directs his Eighth Amendment claims against *all Respondents*, he limits those claims in his appended Affidavit/Statement of Facts to *the Department* ("[M]y life and health [are] at risk as the Department . . . cannot adequately protect me from the COVID-19 virus and its varients [sic.]"[29] Petition App. A at 2). Under these circumstances, Secretary Harry need not invoke personal immunity protection. Moreover, although Page did not include the Department as a party to this action,[30] the Department is the real party in interest. Because Page's

---

[28] Pennsylvania Governor Josh Shapiro named Secretary Harry as the Department's Acting Secretary in January 2023. The Pennsylvania Senate appointed her Department Secretary in June 2023. *See* www.cor.pa.gov/Pages/Secretary%20of%20Corrections.aspx (last visited Aug. 26, 2024).

[29] In his brief opposing Respondents' Preliminary Objections, Page generally declares: "Undoubtedly, the overcrowding led to the spread of COVID-19 in Pennsylvania prisons where social distancing is virtually impossible." Page Br. in Opp'n to Prelim. Objs. at 4 (quotation marks omitted). In his answer to Secretary Harry's Preliminary Objections, Page appears to direct his Eighth Amendment violation claims solely at Secretary Harry. *See* Page Answer to Secretary Harry's Prelim. Objs. at 6-7. Although this Court's review is limited to the Petition and documents attached thereto, *see Vasquez*; *see also McNesby*, and not Page's answer or brief, this Court recognizes that Secretary Harry is the only Respondent potentially liable for Page's Eighth Amendment claims related to overcrowding and potential COVID-19 exposure.

[30] [N]aming Secretary [Harry] as a defendant in the [Petition] [i]s not sufficient to implicate the Department as a defendant. [Civil] Rule 2102(a)(2) . . . provides the mechanism for naming a Commonwealth party as a defendant, stating "[a]n action against a Commonwealth agency or party shall be styled in the following manner: Plaintiff v. '—— (Name of Agency or Party) of the Commonwealth of Pennsylvania.'" Pa.R.C[iv].P. [] 2102(a)(2). Thus, naming Secretary [Harry] is not the same as naming the Department.

*Fauber v. Fetterolf, Harlow & Wetzel* (Pa. Cmwlth. No. 1856 C.D. 2013, filed June 18, 2014), slip op. at 6.

allegations in the Petition are asserted against Secretary Harry as an agent of the Department, she is entitled to invoke the Department's immunity. *See Lewis*.

"Generally, the Commonwealth and its agencies, officials[,] and employees acting within the scope of their duties are immune from suits for *damages*."[31] *Stackhouse v. Pa. State Police*, 892 A.2d 54, 58 (Pa. Cmwlth. 2006) (emphasis added). Here, rather than damages, Page requests "a *declaration* that the acts and/or omissions of [] Respondents violated his rights under the [U.S.] and Pennsylvania Constitutions" and "an *injunction . . .* to enjoin [SCI-]Forest prison officials to return all his legal boxes and case file documents which are being withheld from him, and to restore model form legal papers and motions to the law library . . . ." Petition at 9 (emphasis added). Thus, Page seeks only declaratory and mandatory injunctive relief.[32]

This Court has ruled that although, in addition to damages, "sovereign immunity bars claims seeking mandatory injunctions to compel affirmative action

---

[31] "Damage suits will be barred unless the plaintiff establishes that the cause of action falls under one of the specifically enumerated legislative exceptions to immunity." *Stackhouse v. Pa. State Police*, 892 A.2d 54, 59 (Pa. Cmwlth. 2006); *see also* Section 8521 of the Judicial Code, 42 Pa.C.S. § 8521. The exceptions under which liability may be imposed relate to (1) vehicle liability; (2) medical-professional liability; (3) care, custody, and control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, and control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b).

[32] Sovereign immunity does not bar prohibitory injunction claims. *See* S*tackhouse*. "[T]he substance of the relief requested [] determines whether the injunction is mandatory or prohibitory. The nature of mandatory injunctions is to 'command[ ] the performance of an affirmative act[.]'" *Firearms Owners Against Crime - Inst. for Legal, Legislative & Educ. Action v. Evanchick*, 291 A.3d 507, 514 (Pa. Cmwlth. 2023) (citation omitted) (quoting *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137 (Pa. Cmwlth. 2008)). Because Page requests preliminary and permanent injunctions directing SCI-Forest prison officials *to return his legal documents* and *to restore the model form legal papers and motions*, *see* Petition at 9, he seeks mandatory injunctions for which Secretary Harry has immunity.

by Commonwealth officials,"[33] *Stackhouse*, 892 A.2d at 61; *see also Firearms Owners Against Crime - Inst. for Legal, Legislative & Educ. Action v. Evanchick*, 291 A.3d 507 (Pa. Cmwlth. 2023), "[t]o the extent that [Page] seek declarations regarding [Secretary Harry's] duties, and [his] right to certain benefits . . . , [his] claim[s are] not barred by sovereign immunity." *Firearms Owners*, 291 A.3d at 515. Accordingly, although she is immune from the mandatory injunctive relief Page requests,[34] Secretary Harry could be liable relative to Page's declaratory judgment claims to the extent he states valid constitutional violations.

   b. First Amendment Claims

   Page asks this Court for a declaration that SCI-Forest staff and, thus, Secretary Harry, violated his constitutional rights by withholding boxes of his legal mail.[35]   Under the First Amendment, "prisoners have the constitutional right to

---

[33] Notwithstanding, Page fails to set forth in the Petition the necessary preliminary and permanent injunction criteria.

[34] This Court acknowledges that state law cannot provide broader immunity for federal constitutional violation claims brought in state courts than is available for such claims brought in federal court. *See Howlett v. Rose*, 496 U.S. 356 (1990); *see also Watkins v. Pa. Dep't of Corr.*, 196 A.3d 272 (Pa. Cmwlth. 2018).  Generally, a state official who violates federal constitutional law is "stripped of his official or representative character and is subjected . . . to the consequences of his individual conduct.  The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. 123, 159-60 (1908) (federal courts may award prospective relief against state officials for federal law violations); *see also Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (*VOPA*) ("when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the [s]tate for sovereign[]immunity purposes").  However, under federal law, immunity bars suits seeking injunctive relief against state officials where, as here, the state/state agency is the real party in interest.  *See VOPA* (the *Ex parte Young* exception to sovereign immunity does not apply when the state is the real party in interest); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *State of Hawaii v. Gordon*, 373 U.S. 57 (1963).

[35] In his answer to Secretary Harry's Preliminary Objections, Page expanded his claim to include alleged interference with his legal mail in that SCI-Forest staff opened his privileged mail outside of his presence.  However, because this Court's review is limited to the Petition and appended documents, and he did not make that claim therein, this Court will not address it.

petition the [g]overnment for redress of their grievances, which includes a reasonable right of access to the courts" to challenge unlawful convictions and constitutional rights violations. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).

This Court acknowledges that "[alt]hough 'confinement and the needs of the penal institution impose limitations on constitutional rights[,]' *Jones v.* [*N.C.*] *Prisoners' Lab*[.] *Union, Inc.*, 433 U.S. 119, 125 . . . (1977), . . . 'incarceration does not divest prisoners of all constitutional protections.' *Shaw v. Murphy*, 532 U.S. 223, 228 . . . (2001)." *Nunez v. Blough*, 283 A.3d 413, 423 (Pa. Cmwlth. 2022). Relevant to Secretary Harry's purported interference with Page's legal mail, Section 3 (Personal Property, Cell Contents, and Contraband), subsection B (Accumulation of Items - Cell Content Limitations) of Department Policy DC-ADM 815 states, in relevant part:

> 1. An inmate in general population is permitted storage space equal to four records center boxes. This space may consist of four records center boxes or one footlocker and two records center boxes. In a cell with a built-in, or freestanding storage cabinet, the inmate is permitted to use that space and either two records center boxes or one footlocker.
>
> . . . .
>
> 6. Any item(s) in the inmate's possession that is not included in Subsection B. [] will be considered contraband in accordance with Subsection C. below [(relating to contraband)].
>
> . . . .
>
> 11. The Facility Manager may permit an inmate to maintain extra storage boxes for legal materials for active cases:
>
>> a. the only legal material permitted will be court filings, transcripts, notes of testimony, and notes

22

prepared by the inmate.[36]  This does not include reference materials, books, or photocopied cases;

b. excess legal materials will be stored in a separate box marked "Legal Materials Only;"

c. the inmate must send a DC-135A, Inmate Request to Staff Member, to the Facility Manager/designee requesting permission to maintain extra storage boxes for legal materials. The DC-135A must describe the legal materials defined in Subsection B.11.a. above; and

d. if approved by the Facility Manager/designee, a copy of the DC-135A shall be forwarded to the Property Officer; the number of boxes permitted and a brief description of the contents shall be noted on the inmate's DC-153.

12. **An inmate may not exceed the property limits established by the Department**.  Excess property, as determined by the Facility Manager/designee, may be shipped out at the inmate's expense or destroyed.  If an inmate has accumulated excess property prior to transfer to another Department facility or release, the sending facility shall ensure that the excess property is shipped out at the inmate's expense or destroyed, prior to the inmate's transfer.

DC-ADM 815 at 3-2 - 3-4 (emphasis added; original bold emphasis omitted).[37]

Although "due process requires that an inmate must be afforded access to the courts in order to challenge unlawful convictions and violations of his constitutional rights[,]" this Court has determined that the Department's policies limiting the volume of materials, including legal documents, that each inmate may

---

[36] The Petition does not reflect whether Page sought approval to possess all of his legal materials.

[37] www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/815%20Personal%20Property,%20State%20Issued%20Items%20and%20Commissary%20-%20Outside%20Purchases.pdf (last visited Aug. 26, 2024).

possess is reasonably related to safety and security goals[38] and, thus, does not deprive an inmate of his right to access to the courts. *Hackett*, 751 A.2d at 275.

Moreover, the *Hackett* Court explained:

> Although denial of access to legal documents may constitute a violation of a prisoner's First Amendment right to petition the courts and/or Fourteenth Amendment due process rights, *Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir.1992), in order to state a cognizable claim for violation of the right to access to the courts, **a prisoner must allege and offer proof that he suffered an "actual injury"** to court access as a result of the denial. *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir.1997). The [U.S.] Supreme Court has defined actual injury as the loss or rejection of a nonfrivolous legal claim regarding the sentencing or the conditions of confinement. *Lewis v. Casey*, 518 U.S. 343 . . . (1996).

*Hackett*, 751 A.2d at 275-76 (emphasis added) (quoting *Robinson v. Ridge*, 996 F. Supp. 447, 449 (E.D. Pa. 1997), *aff'd*, 175 F.3d 1011 (3d Circ. 1999)).

Page also asks this Court for a declaration that SCI-Forest staff and, thus, Secretary Harry, violated his rights to access to the courts by removing legal books and model legal forms from the law library.[39] In *Bounds v. Smith*, 430 U.S. 817 (1977), the U.S. Supreme Court held that "the fundamental constitutional right

---

[38] The *Hackett* Court reasoned:

> If the inmates were allowed to keep as much material as desired, an obvious fire hazard would be created. This is especially true where inmates are locked in their cells.

> Moreover, an excessive amount of material in the cell provides an opportunity to hide contraband, including weapons and drugs. By limiting the amount of materials inmates may keep in their cells, the prison authorities are better able to insure the safety of the facility.

*Id.* at 275. The *Hackett* Court acknowledged that the policy did not prevent the inmate from exchanging one box of legal materials for another whenever necessary. *See id.* Page concedes that SCI-Forest staff has allowed him to review two of his five boxes of legal documents.

[39] Page does not claim that he was denied access to the law library or to other library materials.

of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id*. at 828. "In the cases to which *Bounds* traced its roots, [the U.S. Supreme Court] had protected that right by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents[.]" *Lewis*, 518 U.S. at 350.

>This Court has summarized:

>The [U.S. Supreme] Court in *Bounds* noted that it has "consistently required [s]tates to shoulder affirmative obligations to assure all prisoners meaningful access to the courts." [*Id*.] at 824 . . . . [T]he Court pointed out that prison authorities may consider economic factors in determining the extent of these provisions and/or the "methods used to provide meaningful access." [*Id*.] at 825 . . . .

>Moreover, this right of access was somewhat restricted by the [U.S. Supreme] Court's later decision in *Lewis* . . . , wherein the [U.S. Supreme C]ourt held that an inmate was **required to establish actual injury**, i.e., the shortcomings of the prison authority . . . hindered the inmate's efforts to pursue a legal claim. Additionally, the [U.S. Supreme] Court in *Lewis* indicated that this injury requirement is not satisfied by any type of frustrated legal claim, but only by claims relating to direct appeals from criminal convictions involving incarceration, habeas petitions[,] and civil rights actions under [Section] 1983 to vindicate basic constitutional rights.

>Further, the [U.S. Supreme] Court in *Lewis* reiterated that "*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355 . . . . Rather, the [U.S. Supreme] Court indicated that *Bounds* merely requires the prison authorities to provide inmates with the tools they need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.

25

*Moss v. Pa. Dep't of Corr.*, 868 A.2d 615, 617-18 (Pa. Cmwlth. 2004) (emphasis added; footnote omitted).

Here, Page merely declares that the Department's legal document limitation policy and lack of law library forms "prejudices his ability to bring his pro se PCRA matters before the [trial court] and [Judge] Rogers in any meaningful way." Petition at 9. Because he has not alleged *an actual injury*, this Court concludes that he has failed to state a legally valid claim for denial of access to the courts, either because SCI-Forest staff/Secretary Harry has withheld his legal documents or because the SCI-Forest staff/Secretary Harry removed legal form petitions/motions from the law library.

c. Eighth Amendment Claim

Page also asks for a declaration from this Court that SCI-Forest staff and, thus, Secretary Harry, violated his Eighth Amendment rights relative to overcrowding and potential COVID-19 exposure. Page specifically alleges in the Petition:

> 2. [] Page is virtually defenseless against [the COVID-19] virus which has morphed into variants due to cramped quarters, where overcrowding in Pennsylvania prisons make it impossible to socially[]distance from others.
>
> 3. Per "fireside chats": former Secretary Oberlander ([SCI-]Forest) informed [Page] that numerous inmates at [SCI-]Forest[] have died from the deadly disease.
>
> 4. There is an extant and undeniable risk to [Page's] overall health. [] Page is being pyschologically [sic] injured and exposed to serious harm where prison overcrowding has deprived him of the basic human need of safety.
>
> 5. [] **Respondents** know that there exists this overcrowding, yet have not responded reasonably. In summary, [Page] is subjected to living conditions which

26

have caused and is causing anxiety, fear[,] and emotional distress at the thought of dying in prison from a disease he cannot protect himself from [sic].

Petition at 5-6 (emphasis added).

The Eighth Amendment "imposes duties on [prison] officials . . . [to] provide humane conditions of confinement[,] . . . [i.e., they] must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'  *Hudson*, 468 U.S. [at] 526-[]27 . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In *Farmer*, the U.S. Supreme Court observed:

> [**A**] **prison official violates the Eighth Amendment only when two requirements are met**.  First, the **deprivation** alleged **must be**, **objectively**, "**sufficiently serious**," *Wilson* [*v. Seiter*], 501 U.S.[ 296], []298 . . . [(1991)]; *see also Hudson v. McMillian*, . . . 503 U.S.[ 1,] 5 . . . [(1992)]; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," *Rhodes*[ *v. Chapman*,] . . . , 452 U.S.[ 337,] 347 . . . [(1981)].  For a claim (like the one here) based on a failure to prevent harm, **the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm**.  *See Helling* [*v. McKinney*,] . . . , 509 U.S.[ 25,] 35 [(1993)] . . . .
>
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson*, 501 U.S.[] at 297 . . . (internal quotation marks, emphasis, and citations omitted).  To violate the [Eighth Amendment], **a prison official** must have a "sufficiently culpable state of mind." [*Id.*]; *see also id.*[] at 302-[]03 . . . [;] *Hudson* . . . , 503 U.S.[] at 8 . . . .  In prison-conditions cases that **state of mind is one of "deliberate indifference" to inmate health or safety**, *Wilson*, . . . 501 U.S.[] at 302-[]03 . . . [;] *see also Helling* . . . ; *Hudson* . . . ; *Estelle* [*v. Gamble*], . . . 429 U.S.[ 97,] 106 [(1976).]

27

*Farmer*, 511 U.S. at 834 (emphasis added; footnote omitted).  Therefore, "[a]n Eighth Amendment claim contains an objective inquiry and a subjective inquiry, both of which must be established to state a viable claim." *Brooks v. Kelly* (Pa. Cmwlth. No. 928 C.D. 2022, filed Apr. 19, 2024), slip op. at 11; *see also Tindell v. Dep't of Corr.*, 87 A.3d 1029 (Pa. Cmwlth. 2014).

Regarding the objective requirement, "[a] substantial risk of serious harm is one in which the risk is 'so great that it is almost certain to materialize if nothing is done.'" *Horan v. Newingham* (Pa. Cmwlth. No. 2622 C.D. 2015, filed Oct. 24, 2016), slip op. at 16 (quoting *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004)).  This Court has recognized that the objective element of the Eighth Amendment confinement conditions claims can be met relative to COVID-19 because it is a very contagious virus that creates an objectively serious risk to inmate health or safety.  *See Brooks*.  Here, however, Page asserts nothing more in the Petition than that Secretary Harry has not reasonably responded to the COVID-19 risk to inmates.[40]  Page has not specified whether and how SCI-Forest staff/Secretary Harry violated the Department's COVID-19 protocols.

The second, subjective, element

[r]equire[s] the demonstration of a state of mind akin to criminal recklessness, and . . . a prisoner must establish that[] (i) the prison official knew of and disregarded an excessive risk to inmate health or safety; (ii) the prison official was aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (iii) the prison official drew the inference.  [*Farmer*,] 511 U.S. at 837, 840 . . . .

---

[40] Secretary Harry requests that this Court take judicial notice of the Department's COVID-19 protocols on its website.  *See* Secretary Harry's Prelim. Objs. at 7 n.2.  This Court "take[s] judicial notice of [the Department's] policies and handbooks, which appear on [its] official website[.]" *Hill*, 64 A.3d at 1165 n.3.  However, the linking information no longer exists. *See* www.cor.pa.gov/pages/COVID-19.aspx (last visited Aug. 26, 2024).  Notwithstanding, since Page does not expressly challenge those protocols, they are not necessary for this Court's review.

*Tindell*, 87 A.3d at 1039 (footnote omitted).

This Court acknowledges that Page need not allege that he *has been* harmed. *See Helling*, 509 U.S. at 33 ("[T]he Eighth Amendment protects against future harm to inmates[.]"); *see also Brooks*, slip op. at 9 (quoting *Tindell*, 87 A.3d at 1039) (regarding COVID-19, "[t]he alleged medical need does not necessarily need to be current, 'but may result from a condition of confinement that is sure to or very likely to pose an unreasonable risk of serious damage to future health'"). Moreover, this Court does not take lightly Page's claims that he felt unsafe when confined in close quarters during the COVID-19 pandemic. However, "[w]hile we can empathize with [Page's] concerns about exposure to COVID-19, which are certainly heightened in a prison and in other congregate settings, concerns arising from COVID-19 are ones with which society at large is grappling." *Pittman v. Commonwealth* (Pa. Cmwlth. No. 476 M.D. 2022, filed Jan. 2, 2024), slip op. at 14.

Further,

> [i]ncidence of disease or infection in densely populated residence situations such as prisons, standing alone, does not necessarily constitute unconstitutional confinement conditions. *See Shepherd v. Dallas Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009) ("[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate. Nor can the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks."). Further, as the [U.S.] Supreme Court . . . has explained:
>
>> [**P**]**rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk**, **even if the harm ultimately was not averted**. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' unenviable task of

29

> keeping dangerous men in safe custody under humane conditions. Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause [of the Eighth Amendment].

*Farmer*, 511 U.S. at 844-45 (internal citations and some quotation marks omitted).

> Here, assuming the objective prong to establish a deliberate indifference claim is satisfied, . . . [Page] cannot satisfy the subjective prong. The Petition does not contain allegations demonstrating that [Secretary Harry] disregarded the risk to inmate health and safety presented by COVID-19. On the contrary, . . . [t]hroughout the Petition, [Page] expresses dissatisfaction with the extent and efficacy of [Respondents'] efforts, but does not allege that [anyone] ignored appreciated risks of harm presented by COVID-19.

> Given the unique circumstances presented by the worldwide spread of the COVID-19 pandemic, the Petition fails to allege facts suggesting that [Secretary Harry] responded unreasonably to the unprecedented situation or subjectively disregarded an excessive risk to inmate health so as to support a deliberate indifference claim under the Eighth Amendment . . . . *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020) ("We simply cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by 'doing their best.'").

*Pew v. Wetzel* (Pa. Cmwlth. No. 328 M.D. 2022, filed July 21, 2023), slip op. at 6-7 (emphasis added; footnote omitted). Accordingly, Page fails to state a legally viable Eighth Amendment claim against Secretary Harry.

Because Page has failed to state First Amendment and Eighth Amendment actions against Secretary Harry upon which relief may be granted, this Court sustains Secretary Harry's Preliminary Objections.

30

### 4. Petition Amendment

Page requests that this Court grant him leave to amend the Petition in the event it sustains Respondents' Preliminary Objections.[41] *See* Petition at 10; *see also* Page Br. at 5. Civil Rule 1033(a) authorizes this Court to grant Page leave to amend the Petition. *See* Pa.R.Civ.P. 1033(a); *see Lusik v. Pa. State Police* (Pa. Cmwlth. No. 405 M.D. 2017, filed Nov. 26, 2018). Granting such leave is within this Court's sound discretion. *See Feldman v. Lafayette Green Condo. Ass'n*, 806 A.2d 497 (Pa. Cmwlth. 2002). However, "[l]eave to amend a [petition] will be withheld where[, as here,] the initial [petition for review] reveals that the prima facie elements of a claim cannot be established and where the defects are so substantial that amendment is not likely to cure the defects." *Lacava v. Se. Pa. Transp. Auth.*, 157 A.3d 1003, 1017 (Pa. Cmwlth. 2017) (quoting *Simmons v. Twp. of Moon*, 601 A.2d 425, 432 (Pa. Cmwlth. 1991)). Although "[t]he allegations of a pro se complainant are held to a less stringent standard than that applied to pleadings filed by attorneys[,]" *Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004) (emphasis omitted), *aff'd*, 881 A.2d 1263 (Pa. 2005), Page is still "required to 'plead all the facts that must be proved in order to achieve recovery on the alleged cause[s] of action.'" *Dep't of Corr. v. Tate*, 133 A.3d 350, 354 (Pa. Cmwlth. 2016) (quoting *Commonwealth v. Peoples Benefit Servs., Inc.*, 895 A.2d 683, 689 n. 10 (Pa. Cmwlth. 2006)). Where, as here, Page has not pled facts sufficient to achieve recovery against Judge Rogers, Attorney Gottlieb, or Secretary Harry, and amending the Petition would be futile, this Court denies Page leave to amend the Petition.

---

[41] Page also asks this Court to afford him the opportunity to conduct discovery to prove his claims. *See* Petition at 9; *see also* Page Br. at 2, 5. However, "[i]n ruling on preliminary objections in the nature of a demurrer, this Court accepts as true all well-pleaded facts in the [petition for review] and draws all inferences reasonably deducible therefrom in favor of the nonmoving party." *Vasquez*, 279 A.3d at 76. Accordingly, discovery is not necessary at this stage of the litigation.

## Conclusion

Based on the foregoing, accepting as true all well-pleaded facts in the Petition and drawing all inferences reasonably deducible therefrom in favor of the nonmoving party (i.e., Page), as this Court must, "the law indicates with certainty that no recovery is possible" from Judge Rogers, Attorney Gottlieb, and/or Secretary Harry. *Vasquez*, 279 A.3d at 75. Therefore, Respondents' Preliminary Objections are sustained, and Page's Petition is dismissed as to them. Page's Motion to Compel Answer is denied as moot. This litigation will proceed only as to Montgomery County District Attorney Michael Toal, III.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Page,
    Petitioner

    v.

Honorable Thomas P. Rogers;
Montgomery County District Attorney
Michael Toal, III; Secretary of
Department of Corrections, Dr. Laurel
R. Harry; and Attorney Michael P.
Gottlieb,
    Respondents

      No. 164 M.D. 2023

## O R D E R

AND NOW, this 27th day of August, 2024, the Honorable Thomas P. Rogers' (Judge Rogers), Attorney Michael P. Gottlieb's, and the Department of Corrections Secretary Dr. Laurel R. Harry's Preliminary Objections to Joseph Page's (Page) Petition for Review (Petition) are SUSTAINED. Page's Petition is DISMISSED as to those Respondents only. Page's Motion to Compel Answer is denied as MOOT.

This litigation shall proceed only against Montgomery County District Attorney Michael Toal, III, who shall file a responsive pleading within 30 days of the date of this Order.

        _____
        ANNE E. COVEY, Judge